1
2
3
4
5
6                          **UNITED STATES DISTRICT COURT**

7                             **DISTRICT OF NEVADA**

8

9   PAULA PROPPS as Guardian of            )
    A.P.,                                   )
10                                          )        Case No. 2:13-cv-00662-LDG-NJK
                              Plaintiff,    )
11                                          )        **REPORT AND RECOMMENDATION**
    vs.                                     )
12                                          )        (Motion to Remand - Docket No. 14)
    CAROLYN W. COLVIN,                      )        (Motion to Affirm - Docket No. 18)
    Acting Commissioner of Social Security  )
13                                          )
                              Defendant.    )
14  _____)

15          This case involves judicial review of administrative action by the Commissioner of Social

16  Security.  Paula Propps, as guardian and on behalf of A.P. ("Plaintiff"), filed this action on April 19,

17  2013, seeking review of the Commissioner's denial of Plaintiff's application for Supplementary

18  Security Income under Title XVI of the Social Security Act (the "Act").  This matter was referred to the

19  Court by Local Rule IB 1-5 and 28 U.S.C. § 636(b)(1)(B).  The Court finds this matter is properly

20  resolved without oral argument.  *See* Local Rule 78-2.  The Court has considered the Motion to

21  Remand, the Cross-Motion to Affirm and Response, and the Reply.  Docket Nos. 14, 18, 19, and 21.

22  The Court recommends that Plaintiff's Motion to Remand be **DENIED**.  The Court further

23  recommends that the Commissioner's Cross-Motion to Affirm be **GRANTED**.

24  **I.      BACKGROUND**

25          Plaintiff filed an application on October 19, 2009, seeking Supplemental Social Security Income

26  ("SSI") payments for her minor daughter, A.P.  Plaintiff alleged that her daughter has been disabled

27  since July 21, 2003, due to asthma, chronic ear problems, Attention Deficit Disorder ("ADD"),

28  allergies, acid reflux, and speech problems.  Administrative Record ("AR"), at 172.  After the

1    application was initially denied, Plaintiff requested a hearing before an Administrative Law Judge

2    ("ALJ") on October 18, 2010.[1]  *Id*., at 83.  A hearing was held on November 4, 2011, at which time

3    Plaintiff and A.P. both appeared with counsel and testified.  *Id*., at 39-69.  On November 23, 2011, the

4    ALJ determined that A.P. was not disabled from her filing date through the date of the decision.  *Id*., at

5    21-34.  When the Appeals Council denied Plaintiff's request for review of the hearing decision on

6    February 26, 2013, the ALJ's decision became the final decision of the Commissioner.  *Id*., at 1-7.

7         On April 19, 2013, Plaintiff filed an Application to Proceed *In Forma Pauperis*[2] (Docket No. 1)

8    and submitted a Complaint (Docket No. 2) in federal court, seeking judicial review of the

9    Commissioner's decision pursuant to 42 U.S.C. § 405(g).  The Commissioner filed her Answer (Docket

10   No. 11) on November 22, 2013.  Plaintiff filed a Motion to Remand to Social Security Administration

11   (Docket No. 14) on December 20, 2013.  The Commissioner filed a Cross-Motion to Affirm and

12   Response to Motion to Remand (Docket Nos. 18, 19) on April 22, 2013, and Plaintiff replied (Docket

13   No. 21) on March 3, 2014.

14   **II.   STANDARD OF REVIEW**

15        Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision

16   to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if

17   it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th

18   Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  In this context, the term

19   "substantial evidence" means "more than a mere scintilla but less than a preponderance - it is such

20   relevant evidence that a reasonable mind might accept as adequate to support the conclusion."

21   *Moncada*, 60 F.3d at 523; *see also Drouin*, 966 F.2d at 1257.  When determining whether substantial

22

23   _____

          [1]

24        On the form that Plaintiff filled out to request an ALJ hearing, Plaintiff added that her daughter
25   also suffered from "acquired megacolon."  Plaintiff also wrote that she had additional evidence to submit
     from Dr. David Gremse, M.D.  AR, at 83.

26        [2]

27        Plaintiff's application was denied by the Court on September 19, 2013.  The Court ruled that
     Plaintiff's request to waive her filing fee was moot given that Plaintiff paid the $350 filing fee on April
28   19, 2013.  *See* Docket No. 6.

1  evidence exists to support the Commissioner's decision, the Court examines the administrative record

2  as a whole, considering adverse as well as supporting evidence. *Id.*; *Hammock v. Bowen*, 879 F.2d 498,

3  501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the

4  Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at

5  1258; *Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995).

6  **III.    EVALUATING DISABILITY IN A CHILD**

7       The evaluation of disability for children differs from that for adults. *See, e.g.*, *Howard ex rel.*

8  *Wolff v. Barnhart*, 341 F.3d 1006 (9th Cir. 2003).  For an individual under eighteen years of age to be

9  considered disabled for the purpose of receiving benefits, she must suffer from a "medically

10 determinable physical or mental impairment, which results in marked and severe functional limitations,

11 and which can be expected to result in death or which has lasted or can be expected to last for a

12 continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).  An impairment meets

13 this requirement if it meets or equals in severity any impairment that is listed in 20 C.F.R. Part 404,

14 Subpart P, Appendix 1 (the "Listing").  20 C.F.R. § 416.924(d).

15      **A.    The Three-Step Sequential Evaluation Process**

16      The Regulations promulgated by the Social Security Administration establish a three-step

17 sequential evaluation process for child disability cases. *See* 20 C.F.R. § 416.924.  At step one, the

18 relevant inquiry is whether the child is engaged in substantial gainful activity.  20 C.F.R. §416.924(a).

19 If so, no disability exists, and the claim is denied.  20 C.F.R. § 416.924(b).  If the child is not engaged

20 in substantial gainful activity, the fact finder then determines whether the child has a medically

21 determinable impairment or combination of impairments that is severe.  20 C.F.R. §416.924(a).  If the

22 impairment is a "slight abnormality or a combination of slight abnormalities that causes no more than

23 minimal functional limitations," the Commissioner will find that the impairment is not severe and will

24 deny the child's claim.  20 C.F.R. §416.924(c).

25      If the child has a severe impairment, the third and final step assesses whether the impairment

26 meets or medically or functionally equals in severity an impairment in the Listing.  20 C.F.R. §

27 416.924(d).  If the impairment meets or equals the Listing, the child will be found disabled, assuming

28 that the 12-month duration requirement is also met. *Id*.  A child's impairment "is medically equivalent

1   to a listed impairment ... if it is at least equal in severity and duration to the criteria of any listed

2   impairment." 20 C.F.R. § 416.926(a).  To establish medical equivalence, "a claimant must establish

3   symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of

4   a relevant listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (*quoting* 20 C.F.R.

5   § 404.1526).

6          To determine whether a child's severe impairment functionally equals a listed impairment, the

7   Commissioner assesses all of the functional limitations caused by the child's impairment in six

8   "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and

9   relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health

10  and physical well-being.  20 C.F.R. § 416.926a(a), (b).  To functionally equal a listed impairment, a

11  child's impairment must result in "marked" limitations in two domains or an "extreme" limitation in

12  one domain.  20 C.F.R. § 416.926a(a).  A "marked" limitation is one that "interferes seriously with [the

13  child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2).  It

14  is "more than moderate" but "less than extreme."  *Id.*  A child's "day-to-day functioning may be

15  seriously limited when [her] impairment(s) limits only one activity or when the interactive and

16  cumulative effects of her impairment(s) limit several activities."  *Id.*  An "extreme" limitation

17  "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete

18  activities." 20 C.F.R. § 416.926a(e)(3).  It is the rating given to "the worst limitations."  *Id.*

19         **B.     The ALJ's Application Of The Three-Step Process**

20         In the instant case, at step one, the ALJ found that A.P. had not engaged in substantial gainful

21  activity since October 19, 2009, the application date.  AR, at 24, *citing* 20 C.F.R. § 416.924(b) and

22  416.971, *et seq*.  At step two, the ALJ concluded that A.P. had the following "severe" medically

23  determinable impairments: "megacolon, allergic rhinitis, asthma, acid reflux, recurrent ear infections

24  with tubes in her ears, all controlled by medications and regular treatment, and alleged difficulties and

25  attention deficit hyperactivity disorder (ADHD)."  AR, at 24, *citing* 20 C.F.R. § 416.924(a) and

26  416.924(c).  At step three, the ALJ determined that A.P. "did not have an impairment or combination of

27  impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R.

28  Part 404, Subpart P, Appendix 1."  AR, at 24, *citing* 20 C.F.R. § 416.924, 416.925, and 416.926.

4

1    Specifically, the ALJ concluded that A.P.'s combination of impairments did not meet, equal or

2    functionally equal a listing "because her conditions were controlled, and were constantly improving."

3    AR, at 24.  The ALJ, accordingly, concluded that A.P. is not disabled under section 1614(a)(3)(C) of

4    the Social Security Act.  *Id.*, at 34.

5    **IV.    FACTUAL BACKGROUND**

6        **A.    Testimony At The Administrative Hearing**

7        Plaintiff and A.P. both testified at the administrative hearing, which was held in Las Vegas,

8    Nevada, before ALJ Norman L. Bennett, on November 4, 2011.  AR, at 21.  Plaintiff and A.P. appeared

9    in person with attorney Brandy Brown.  *Id.*  Plaintiff testified and described A.P.'s medical ailments,

10   including megacolon, ear problems, acid reflux, asthma, as well as the effects on A.P. of the various

11   medications she is prescribed.  *Id.*, at 51-53, 57-58.  Plaintiff testified that A.P. had difficulties focusing

12   and concentrating.  *Id.*, at 47, 59.  Plaintiff testified that on A.P.'s most recent report card, she received

13   two "D"s and three fails, *id.*, at 46; conversely, Plaintiff's attorney represented that, prior to A.P.'s most

14   recent report card, her report cards were "good."  *Id.*, at 49.[3]  Plaintiff also testified that A.P. was not in

15   a special education program, *id.*, at 47, but that A.P. was enrolled in behavioral and speech therapy at

16   the public school that she attended.  *Id.*, at 50.

17       A.P. testified that she receives mostly "A"s and "B"s in science, which is her favorite subject.

18   *Id.*, at 61.  A.P. testified that her second favorite subject is writing, in which she receives mostly "C"s

19   and "D"s.  *Id.*, at 61-62.  A.P. further testified that she receives mostly "B"s in social studies, her third

20   favorite subject.  *Id.*, at 62.  A.P. testified that she uses the computer at school for her work with

21   science, math, and social studies.  *Id.*, at 63.  A.P. further testified that, while she uses her asthma

22   inhaler on Mondays and Tuesdays after P.E., she does not use the inhaler on Wednesdays.  *Id.*, at 63-64.

23   A.P. testified that, while she sometimes gets stomach aches at school, they usually go away.  *Id.*, at 64.

24   A.P. also testified that, though she is sometimes assigned detention for talking during class, she does

25   _____

    [3]

26       With respect to testimony given during the hearing, the ALJ stated that "the claimant was not
entirely credible."  AR, at 27.  While at first glance it would appear that the ALJ is referring to A.P., it is

27   clear from the context of the ALJ's statement that he is referring to the credibility of A.P.'s parent, and
not to A.P.'s credibility.

28

not get in fights with other students. *Id.*, at 64-65. Finally, A.P. testified that she reads at home and at school, but does not enjoy reading. *Id.*, at 66.

There was no testimony at the administrative hearing from any medical expert.

**B.    A.P.'s Evaluations and Medical Records**

*1.    Treatment by Dr. David Gremse.*

Dr. David Gremse has been A.P.'s treating physician throughout her life. Docket No. 14, at 4. Dr. Gremse has treated A.P. for megacolon, ADHD, allergic rhinitis, and asthma. AR, at 298. In a letter addressed "[t]o whom it may concern," dated July 30, 2010, Dr. Gremse stated that "[d]ue to the chronic nature and complexity of her medical conditions, I request that you consider her eligibility for disability." *Id.* In support of this request, Dr. Gremse stated that A.P.'s conditions required home therapy over the ensuing twelve months, and that such treatment would need to be administered by Plaintiff, since A.P. "is too young to self administer her medical care." *Id.*

*2.    Psychological Evaluation - Lisa Shaffer, Psy.D.*

A.P. underwent a psychological evaluation with Dr. Shaffer on March 22, 2010, following a referral by the Bureau of Disability Adjudication. *Id.*, at 280-85. Dr. Shaffer reported that A.P. appeared her stated age, and was dressed in a neat and age-appropriate manner. Dr. Shaffer further observed that A.P.'s posture and gait appeared normal, with no involuntary movements noted. *Id.*, at 280-81. Dr. Shaffer reported that A.P. appeared to put forth a concerted effort during the evaluation. *Id.*, at 282. Dr. Shaffer found no signficant impairments in A.P.'s social judgment and reasoning, and reported that her abstract reasoning was good. *Id.*, at 283, 284. Dr. Shaffer observed that A.P. has no discernible social skill deficits, but is teased by her peers due to speech difficulties. *Id.*, at 284.

Dr. Shaffer related that, while A.P.'s cognitive abilities are mildly low, they are generally what would be expected given A.P.'s age and level of education. *Id.*, at 283. Dr. Shaffer reported that A.P. exhibits mild to moderate impairments in attention and concentration. *Id.* According to Dr. Shaffer, A.P. is capable of understanding simple instructions, but appeared unable to remember and carry out multiple-step instructions because of difficulties in retaining information. *Id.*, at 284. Dr. Shaffer reasoned that A.P. would likely have trouble sustaining concentration and attention for simple and complex tasks. *Id.* With respect to medication prescribed to A.P. to assist with concentration and

focus, Dr. Shaffer noted that A.P.'s parent (Plaintiff) stated that Adderall has helped A.P. "greatly." *Id*., at 281.  Dr. Shaffer also related that Plaintiff admitted that she does not foster much independence in A.P., "which may have contributed to her difficulties with chores." *Id*., at 283.

Dr. Shaffer's overall prognosis was that A.P.'s ability to function in a regular education setting without special education assistance is "poor at the present time." *Id*., at 285.  Dr. Shaffer appears to have largely based this opinion on A.P.'s difficulties with her peers.  *Id*.

### 3.   *Disability Determination Services' (DDS) Report of April 2010.*

In April of 2010, Dr. Susan Kotler, Ph.D., Dr. Leslie Tolbert, Ph.D., and Dr. April Henry, M.D., conducted a review of A.P.'s record, including the report of Dr. Shaffer, for the Disability Determination Services (DDS).  AR, at 286-92.  In that report, all three doctors noted Dr. Shaffer's observations that with respect to the domain of acquiring and using information, A.P.'s "cognitive abilities are mildly low but generally within what would be expected given her age and level of education; this indicative of mild limitations." *Id*., at 289.  Regarding the domain of attending and completing tasks, the doctors found that A.P. had "mild to moderate impairments in attention and concentration ... [and] will likely have trouble sustaining concentration and attention" for simple tasks. *Id*.  With respect to interacting and relating with others, they noted that A.P.'s speech "was initially quiet in tone, and improved when she was more comfortable w/the examiner." *Id*.  Though she "demonstrated poor pronunciation w/slurred speech and spoke slowly[,]" A.P's overall speech "was normal in quantity, coherent, logical and relevant." *Id*.

The doctors concluded that A.P.'s limitations across the six domains were either "Less than Marked" or there was "No Limitation." *Id*., at 289-90.

### 4.   *DDS Report of August 2010.*

In August of 2010, Dr. Pastora Roldan, Ph.D., and Dr. Mayenne Karelitz, M.D., conducted another review of A.P.'s record. *Id*., at 302-07.  With respect to A.P.'s physical well-being, the report stated that A.P. "needs to take [her] medication for her constipation and also her Asthma medications[.]" *Id*., at 305.  Dr. Roldan and Dr. Karelitz also concluded that A.P.'s limitations across the six domains were "Less than Marked" or there was "No Limitation." *Id*., at 304-05.

//

1          5.        *DDS Report of September 2010.*

2          On September 10, 2010, Dr. Tolbert reevaluated A.P.'s record. *Id.*, at 312.  Therein, Dr. Tolbert

3   stated that A.P.'s "overall IQ scores, teacher information does not support listing level speech or

4   language delays." *Id.*  Dr. Tolbert added that there are "no other indications that further development is

5   needed ... [and] [i]nitial decision appears supported." *Id.*

6          6.        *Assessment by A.P.'s Teachers.*

7          On December 18, 2009, A.P.'s elementary school teachers Michelle Sorom and Rebecca

8   Easterman completed a Teacher Questionnaire. *Id.*, at 199-206.  Therein, the teachers related that A.P.

9   "[g]ets easily distracted," and has "major difficulties in learning and holding her attention to

10  lesson/work in the classroom." *Id.*, at 200-01.  The teachers stated that A.P. finishes her work "but

11  takes a longer time" to do so.  *Id.*, at 201.  The teachers also related that A.P. "needs structure and

12  guidelines, 1-1 help often, and time alone to help her focus on her work." *Id.*, at 202.  In response to the

13  question as to how much of A.P.'s speech they could understand, both when the topic of conversation is

14  known and when the topic of conversation is unknown, the teachers checked the boxes for "Almost

15  All." *Id.*, at 203.  Finally, the teachers noted that A.P. had no observed limitations in the domains of

16  moving about, manipulating objects, or caring for herself. *Id.*, at 203-04.

17         7.        *A.P.'s Individualized Education Program (IEP).*

18         When A.P. was three years old, the Clark County School District (CCSD) determined that she

19  was eligible for special education under the category of speech and language impairment.  Docket No.

20  19, at 10.  A.P.'s initial IEP indicated that diagnostic testing administered on December 2, 2003,

21  demonstrated that the content of A.P.'s speech was not understandable, with a resulting low score in

22  communication.[4]  AR, at 122-23.  By February 2, 2009, A.P.'s annual IEP stated that A.P. had received

23  120 minutes of speech therapy per month, and that she had made "significant progress" in her

24  articulation skills.  *Id.*, at 161.  The IEP also stated that A.P.'s parent reported that A.P. "has made

25  progress in speech therapy." *Id.*  The IEP further stated that A.P. "[w]orks hard during speech therapy

26

27  ─────────────────
        [4]

28      IEPs for A.P. were produced annually following her initial evaluation in December of 2003.

8

1    ... is an enthusiastic and motivated learner ... [and] tries to pronounce words correctly when reading[.]"

2    *Id.*, at 162.  Finally, the IEP related that A.P. "[l]ikes to teach and read[,] ... is responsible and social[,]

3    ... and loves to sing and dance." *Id.*

4    **V.    ANALYSIS**

5        Plaintiff contends that the ALJ erred in finding that A.P.'s impairments do not functionally

6    equal the Listing, and urges remand on the ground that the ALJ's finding of no disability is not

7    supported by substantial evidence established in the record.  Docket No. 14, at 3, 8.  The Court has

8    reviewed the administrative record in its entirety to decide whether substantial evidence exists to

9    support the ALJ's decision, weighing evidence that supports and evidence that detracts from the ALJ's

10   determination.  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

11       **A.    The ALJ's Decision**

12       The ALJ found that A.P.'s combination of impairments "did not meet, equal or functionally

13   equal a listing because her conditions were controlled, and were constantly improving."[5]  AR, at 24.

14   The ALJ, therefore, concluded that "[b]ased on the application for supplemental security income

15   protectively filed on October 19, 2009, the claimant is not disabled under section 1614(a)(3)(C) of the

16   Social Security Act." *Id.*, at 34.

17           *1.  A.P.'s medical conditions.*

18       With respect to A.P.'s medical conditions, the ALJ concluded that while a showing had been

19   made that A.P suffered from asthma, allergies, constipation, abdominal pain, and speech problems, the

20   ALJ reported that these ailments "have been addressed with medication and treatment, and are

21   improving." *Id.*, at 25.

22       First, regarding A.P.'s asthma and allergies, the ALJ found that A.P. "had only mild restrictive

23   ventilary defect, ... [and] her symptoms related to both were controlled by medication." *Id.*  The record

24   //

25

26       [5]

27       The ALJ evaluated the "whole child" in arriving at his conclusions regarding functional
     equivalence.  AR, at 24, *citing* 20 C.F.R. § 416.926a(b), (c).

28

9

1    also demonstrated that A.P. has not had any hospitalizations or any serious medical consultations due to
2    either her asthma or her allergies.  *Id*.

3         Regarding her constipation and abdominal pain, the ALJ found that A.P.'s treating
4    gastroenterologist, David Gremse M.D., "noted that her constipation was due to acquired megacolon,
5    which was alleviated with Miralax for maintenance stool softening therapy."  *Id.*, at 25-26.  Dr. Gremse
6    also prescribed A.P. "a high fiber diet to reduce fecal retention."  *Id*., at 26.  The ALJ reported that an
7    abdominal ultrasound of A.P. was performed in June of 2009, which revealed a normal abdomen.  *Id*.
8    The ALJ afforded "no weight" to Dr. Gremse's letter of July 30, 2010 (wherein he recommended that
9    A.P. be considered eligible for disability), due to the fact that Dr. Gremse "failed to mention the
10   improvement of all of her symptoms."  AR, at 26.

11        With respect to A.P.'s speech difficulties and attention deficit issues, which the ALJ considered
12   the main allegation of the case, the ALJ evaluated the results of numerous evaluations and standardized
13   tests that had been administered to A.P.  *Id*.  Based on the results of these tests, the ALJ reported that
14   A.P.'s processing assessment scores were largely normal, as were her social-emotional skills.  *Id*.  The
15   ALJ stated that A.P. was accordingly eligible to receive "special education in the area of speech and
16   language impairment only."  *Id*.  The ALJ further found that A.P.'s speech impairment "was adequately
17   addressed in the Individualized Education Program" administered by the CCSD, which was reviewed
18   each year.  *Id*.  The ALJ noted that A.P. received speech therapy for thirty to forty-five minutes per
19   week, was earning B's and C's in school, and also received weekly help from a psychologist for math
20   concepts, focusing, and attention.  *Id*.

21        The ALJ considered the opinions of A.P.'s teachers as reflected in the questionnaire, *supra*.
22   AR, at 27.  The ALJ reported that these teachers found A.P.'s reading, writing, and math skills to be at
23   an appropriate third grade level.  *Id*.  Regarding the teachers' statements that A.P. was easily distracted
24   and had a difficult time concentrating, the ALJ gave this portion of the teachers' opinion "little weight."
25   *Id*.  While noting that he would ordinarily assign "great weight" to a child's teacher's assessment with
26   respect to the severity of claimed impairments, the ALJ noted that the "teacher questionnaire was
27   completed three days prior to [A.P.'s] diagnosis of ADHD and did not reflect her actual status, as their
28   opinions centered around her inability to focus, a central component of ADHD."  *Id*.  Regarding A.P.'s

1    focus and attention deficit issues, the ALJ reported that a "note from February 2011 revealed that her
2    ADHD was successfully treated with Adderall."[6]  *Id.*

3        The ALJ also considered the psychological consultative examination conducted by Dr. Shaffer,
4    *supra*, and noted Dr. Shaffer's conclusion that A.P.'s mild to moderate impairments in attention and
5    concentration were "indicative of mild limitations." *Id.*, at 26.  The ALJ also reported that Dr. Shaffer
6    found no significant impairments in social judgement, abstract reasoning, or cognitive function. *Id.*
7    While A.P.'s cognitive functions were mildly low, they were generally "what would be expected given
8    her age and her level of education." *Id.*  Based on the foregoing factors, the ALJ afforded "little
9    weight" to Dr. Shaffer's prognosis that A.P.'s "ability to function in a regular education setting ...
10   without special education assistance is poor at the present time." *Id.*, at 27, 285.  In arriving at this
11   determination, the ALJ reasoned that "the claimant was already receiving help with her speech issues,
12   and the prognosis conflicted with the claimant's daily functioning and her former and current testing
13   that indicated no significant limitations in academic skills or in intellectual functioning." *Id.*, at 26-27.

14           *2.  A.P.'s functionality.*

15       Regarding A.P.'s functionality across the six functional equivalence domains, the ALJ found
16   that the testimony presented at the hearing and A.P.'s medical records - including A.P.'s reports and
17   evaluations by medical professionals - were consistent with a finding of no disability. *Id.*, at 28-34.
18   Specifically, the ALJ found that A.P. "does not have an impairment or combination of impairments that
19   result in either "marked" limitations in two domains of functioning or "extreme" limitation in one
20   domain of functioning. *Id.*, at 33.  In arriving at these findings, the ALJ afforded "significant weight" to
21   the findings of the Disability Determination Services (DDS). *Id.*, at 27.  The DDS "concluded that A.P.
22   was less than marked in acquiring and using information, attending and completing tasks, interacting
23   and relating with others, and in health and physical well-being, and had no limitation in moving about
24   and manipulating object, and caring for herself." *Id.*; *see also* 289-90, 304-05, 312.

25   //

26

27        [6]
28       In addition, A.P.'s parent reported that A.P.'s attention deficit symptoms were "greatly"
     improved by the use of Adderall.  AR, at 281.

With respect to acquiring and using information, the ALJ found that Dr. Shaffer stated that A.P.'s cognitive abilities were mildly low but generally within what would be expected given her age and level of education." *Id.*, at 29.  The ALJ further noted that A.P.'s grades, which were generally A's, B's, or C's, were not indicative of any significant learning disability.  *Id.*, at 30.

With respect to attending and completing tasks, the ALJ noted that even prior to A.P.'s diagnosis of ADHD, she suffered only mild to moderate impairments in attention, which did not result in a marked limitation.  *Id.*  As described above, A.P.'s focus and ability to complete tasks had improved significantly subsequent to her prescription for Adderall.  *Id.*, at 27.

The ALJ also found that A.P. had no marked limitation in interacting and relating with others, as the record reflected that she had no social skill deficits and was friendly, though she was teased due to speech difficulties.  *Id.*, at 31.  Nonetheless, the ALJ found that A.P.'s speech, which he heard firsthand during the hearing, "appeared very good," and was normal in quantity, coherent, logical, and relevant.  *Id.*, at 30-31.  The ALJ further reported Dr. Shaffer's observation that A.P.'s speech and tone improved when she was comfortable with the examiner.  *Id.*, at 31.

The ALJ further found that A.P. had no limitation in moving about and manipulating objects. *Id.*, at 32.  The ALJ's conclusion in this regard is supported by the three reports of the DDS, *supra*, as well as by the questionnaire filled out by A.P.'s teachers, *supra*.

The ALJ did not find any marked limitation in A.P.'s ability to care for herself, noting that A.P. "was able to perform self-care skills, even though her mother had not fostered much independence in this area."  AR, at 33.  This conclusion is also buttressed by the three reports of the *DDS*, *supra*, and is further corroborated by Dr. Shaffer in her consultative psychological examination.  AR, at 281.

Finally, in the domain of health and physical well-being, the ALJ found no marked limitation, given that A.P.'s medical conditions were stable and she was under appropriate medical care.  *Id.*, at 33. Thus, while A.P. still required medication for the medical conditions described above, the ALJ specifically found that A.P. was "steadily improving in all areas."  *Id.*

## B.    The Parties' Positions

Plaintiff asserts that the ALJ's conclusions are not supported by substantial evidence in the record.  Docket No. 14, at 5.  Specifically, Plaintiff contends that the ALJ erred by failing to consider

1   A.P.'s IEP records, *id.*, at 6-7, and because the ALJ afforded (1) "no weight" to Dr. Gremse's letter of

2   July 30, 2010; (2) "little weight" to Dr. Shaffer's prognosis; and (3) too much weight to the opinions of

3   the five DDS medical consultants, each of whom found that A.P. suffered no marked limitation across

4   the six functional domains.  *Id.*, at 4-7.

5        In response, the Commissioner contends that the ALJ properly reviewed the evidence, made

6   proper findings of fact and conclusions of law, and complied with his statutory obligation to fully

7   develop the record by considering the available evidence.  Docket No. 19, at 2, 9, 15.

8        First, the Commissioner states that "Plaintiff's argument that the ALJ failed to consider

9   Plaintiff's IEP records is without merit."  *Id.*, at 13.  In support, the Commissioner points to the ALJ's

10  decision wherein he specifically discusses the IEP assessment of A.P.'s speech impairment.  *Id.*, *citing*

11  AR, at 26.  Moreover, the Commissioner notes that almost all of the IEP evidence that Plaintiff relies

12  upon is from the original IEPs (when A.P. was less than five years of age), a time period which is not at

13  issue.  Docket No. 19, at 13.

14       Second, the Commissioner maintains that the ALJ appropriately gave "no weight" to Dr.

15  Gremse's letter of July 30, 2010, because it was not supported by the evidence in the record.  *Id.*, at 10.

16  The Commissioner notes that Dr. Gremse's treatment records showed that Plaintiff's constipation

17  responded well to medication.  *Id.*  The Commissioner also states that "Dr. Gremse's letter and

18  treatment records do not show that Plaintiff has the level of physical difficulties discussed in the

19  regulations."  *Id.*, at 12, *citing* 20 C.F.R. § 416.926a(1)(4).

20       The Commissioner next argues that the ALJ properly gave "little weight" to Dr. Shaffer's

21  prognosis that A.P.'s prospects of functioning in a regular educational environment were "poor."

22  Docket No. 19, at 14; AR, at 27.  The Commissioner points out that, upon examining A.P., Dr. Shaffer

23  reported that A.P. "spoke in a coherent, logical, and relevant manner, and there was no evidence of

24  motor dysfunction."  Docket No. 19, at 10.  Moreover, Dr. Shaffer reported that testing showed Plaintiff

25  had "only a mild to moderate impairment in attention and concentration."  *Id.*, at 14.  The

26  Commissioner further emphasizes that "Dr. Shaffer *did not* opine Plaintiff had marked limitations in

27  any area of functioning[.]"  *Id.*, at 15 (emphasis supplied).

28  //

1    With respect to the weight the ALJ afforded to the DDS, the Commissioner notes that Dr.

2    Gremse's opinion that A.P. should be eligible for disability is inconsistent with the opinions of the five

3    DDS medical consultants, who noted some impairment but found that A.P. did not suffer a marked

4    limitation in any of the six functional domains. *See id.*, at 6-9; AR, at 289-90, 304-05, 312. The ALJ

5    was also required to resolve the conflict in the record between Dr. Shaffer's prognosis (that A.P.'s

6    ability to function in a regular education setting without special education assistance was poor) and the

7    DDS doctors, all of whom opined that A.P. displayed a treatable set of conditions. AR, at 27, 289-90,

8    304-05, 312. In light of the foregoing, the Commissioner argues that the ALJ's reliance on the DDS

9    medical consultants' opinions was valid given the inconsistency of the medical opinions within the

10   evidentiary record. Docket No. 19, at 12-13. Finally, the Commissioner argues that the ALJ was

11   justified in relying upon the DDS doctors, because "state agency medical and psychological consultants

12   ... are highly qualified physicians ... who are also experts in Social Security disability evaluation." *Id.*,

13   at 9, *citing* 20 C.F.R. § 416.927(e)(2)(i).

14        **C.    Findings**

15        With respect to A.P.'s IEPs, the Court finds that the Commissioner is correct that the ALJ

16   explicitly considered and discussed the IEP assessments and their relevance to Plaintiff's claims. AR,

17   at 26. The Court further finds that the IEP assessments cited by Plaintiff which originate prior to 2009

18   are not relevant to an analysis of disability with an administrative filing date of October 19, 2009 (the

19   date from which Plaintiff must demonstrate that A.P. was disabled).

20        The Court further finds that the ALJ was well within his discretion to afford "no weight" to Dr.

21   Gremse's letter, due to the fact that Dr. Gremse failed to acknowledge that A.P.'s medical conditions

22   were steadily improving. *Id.*; *see Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (the ALJ may

23   disregard a treating physician's opinion by providing specific and legitimate reasons); *Magallanes v.*

24   *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) ("The treating physician's opinion is not ... necessarily

25   conclusive as to either a physical condition or the ultimate issue of disability"). Moreover, when

26   presented with conflicting medical opinions, the ALJ must resolve the conflict. *See Batson v. Comm'r*

27   *of Social Sec'y Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (*citing Matney v. Sullivan*, 981 F.2d 1016,

28   1019 (9th Cir. 1992)).

1     Similarly, the ALJ was within his discretion to afford "little weight" to Dr. Shaffer's prognosis
2     that A.P.'s ability to function in a regular education setting without special education assistance was
3     "poor." AR, at 27. As discussed above, Dr. Shaffer reported that A.P. appeared to put forth a concerted
4     effort during the evaluation. *Id.*, at 282. Dr. Shaffer also found no significant impairments in A.P.'s
5     social judgment and reasoning, and reported that her abstract reasoning was good. *Id.*, at 283, 284.
6     Finally, Dr. Shaffer observed that, while A.P.'s cognitive abilities were mildly low, they were generally
7     what would be expected given A.P.'s age and level of education. *Id.*, at 283. Put simply, the ALJ was
8     entitled to conclude, given the above findings of the examining psychologist, that Dr. Shaffer's
9     prognosis was overly pessimistic in that it "conflicted" with the administrative record. *Id.*, at 26-27.

10     Finally, the ALJ was well within his discretion in affording "significant weight" to the findings
11     of the DDS medical consultants. *Id.*, at 27. In so doing, the ALJ rejected Dr. Gremse's opinion and Dr.
12     Shaffer's prognosis in favor of the conclusions of the DDS medical consultants, finding those doctors'
13     opinions to be consistent with and well-supported by the record as a whole. *Id.*, at 27, 289-90, 304-05,
14     312. Resolving the evidentiary conflict in favor of the DDS medical consultants was proper and wholly
15     within the ALJ's discretion. *Batson*, 359 F.3d at 1195. Moreover, where the evidence can support
16     either affirming or reversing the decision, the Court may not substitute its judgment for that of the ALJ.
17     *Parra v. Astrue,* 481 F.3d 742, 746 (9th Cir. 2007) (citation omitted).

18     **VI.     CONCLUSION**

19     Judicial review of a decision to deny disability benefits is limited to determining whether the
20     decision is based on substantial evidence reviewing the administrative record as a whole. *Drouin*, 966
21     F.2d at 1257; *Hammock*, 879 F.2d at 501. If the record will support more than one rational
22     interpretation, the Court must defer to the ALJ's interpretation. *Matney*, 981 F.2d at 1019. If the
23     evidence can reasonably support either affirming or reversing the ALJ's decision, the Court may not
24     substitute its judgment for the judgment of the ALJ. *See, e.g., Flaten v. Sec'y of Health and Human*
25     *Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). It is the ALJ's responsibility to make findings of fact,
26     drawing reasonable inferences from the record as a whole, and to resolve conflicts in the evidence and
27     differences of opinion. *Magallanes*, 881 F.2d at 750 ("The ALJ is responsible for determining
28     //

15

credibility and resolving conflicts in medical testimony") (*citing Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)).

Having reviewed the administrative record as a whole and weighed the evidence that supports and detracts from the ALJ's conclusion, the Court finds that the ALJ's decision is supported by substantial evidence under 42 U.S.C. § 405(g), and that the ALJ did not commit legal error.

## **RECOMMENDATION**

Based on the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's Motion to Remand (Docket No. 14) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the Commissioner's Cross-Motion to Affirm (Docket No. 18) be **GRANTED**.

## **NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the Courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED: June 12, 2014.


_____
NANCY J. KOPPE
United States Magistrate Judge

16